UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARDALE SPECIALTY FOODS, LLC,

        Plaintiff,                                           Case No. 06-11744
                                                          HON. BERNARD A. FRIEDMAN

vs.

VENTURA FOODS, LLC,

        Defendant.
_____/

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION TO DISMISS ITS COUNTERCLAIMS, AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AS MOOT**

**I.    Introduction**

In its Complaint, Mardale Specialty Foods, LLC ("Mardale") contends that Ventura Foods, LLC ("Ventura") did not comply with an Asset Purchase Agreement ("the Agreement") that the two parties entered into in 2004. Pursuant to the Agreement, Ventura paid $7,630,933 for Mardale's assets, which were expected to include formulas for making nutritional supplements. In addition to the payment, Mardale was to pay a 5% royalty to Ventura if it sold any products made from Mardale's formulas. The royalty payments were referred to by the parties as "Contingent Payments."

Mardale now contends that Ventura did not make the Contingent Payments as required. Ventura claims that it never sold any products derived from Mardale's formulas, and has filed a motion for summary judgment on Mardale's claims.

1

Ventura responded to Mardale's complaint by filing a counterclaim against Mardale for breach of contract and fraudulent inducement. Mardale has filed a motion for summary judgment on Ventura's counterclaim. Ventura, in its motion for summary judgment, stated that if its motion is granted, then it further moves that it be permitted to dismiss its counterclaims without prejudice.

## II. Facts

Section 1.06 of the Agreement governs Contingent Payments. It states, in part:

> Buyer shall maintain accurate records of Net Sales of Nutritional Products and, together with each Contingent Payment, shall furnish to Seller a report showing the calculation of Net Sales of Nutritional Products for the applicable Contingent Payment Quarter, including a breakdown of (I) total gross sales of Nutritional Products during such Contingent Payment Quarter and (ii) the deductions for such Contingent Payment Quarter in the categories set forth in clauses (a) through (d) of the definition of "Net Sales" above. Seller shall have the right to have its authorized representatives examine and audit such records at reasonable times and upon reasonable notice; however, no more than one such examination shall be conducted during any twelve-month period.
> * * *
> Any Contingent Payment or related report submitted to Seller during any calendar year and not objected to in writing by Seller by March 31st of the following calendar year shall conclusively be deemed correct.

> Def. Exh. A.

Pursuant to the Agreement, if Ventura sold any products made using Mardale's formulas, Ventura agreed to: 1) make a 5% royalty payment to Mardale; 2) keep records of the sales of products derived from Mardale's formulas; and 3) submit a report showing the calculations of those net sales. If Mardale disagreed with Ventura's calculations, as shown in the report, it had to say so in writing by March 31st of the following calendar year. Mardale could then request to audit Ventura's records. If Mardale requested such an audit, then Ventura was obligated to make its records available to Mardale for a Mardale representative to conduct an audit.

2

Ventura claims that Section 1.06 of the Agreement never became operative. Ventura argues that Mardale did not deliver the formulas it expected, that such formulas were actually only an ingredient lists, and that they were useless to Ventura. Ventura further argues that it never used any of Mardale's formulas, and never sold any products made from Mardale's formulas.

On May 16, 2005, Frederick Moore of Mardale wrote to Ventura's President, asking when it could expect the first of its Contingent Payments from Ventura. In his letter, he stated, in part:

> If sales of nutritional products have been made, I would like to receive an accounting (as called for in our agreement) of gross sales and any expenses deducted to arrive at net sales. If no sales of nutritional products have yet occurred, I would appreciate your best estimate as to when sales will commence.

Def. Exh. B.

In response, Ventura wrote a letter confirming that it had not begun selling nutritional products, and did not anticipate doing so in the future. Ventura stated, in part:

> Because the so-called Nutritional Business Formulae delivered by Mardale did not enable Ventura to make or sell a product, and have not been used in any form, there will be no contingent payments.

Def. Exh. C.

On August 25, 2005, after receiving Ventura's response, Mardale asked Ventura for a report of the net sales of the products in question, stating in a letter:

> While we know you believe no contingent payments are required, we would still like to see a report of net sales for the quarters ended December 2004, March 2005, and June 2005 so that we can assess the magnitude of our dispute over contingent payments.

Def. Exh. D.

On August 30, 2005, Ventura submitted the requested report to Mardale, showing $0 in gross sales, deductions and net sales of nutritional products for the quarters ending June 2004, September 2004, December 2004, March 2005 and June 2005. Def. Exh. E.

Under Section 1.06 of the Agreement, Mardale had two avenues by which it could object to the figures in Ventura's report. It could either object to the report in writing by March 31, 2006, or it could request to have a representative conduct an audit of Ventura's records. Mardale did not pursue either option.

### III. Analysis

In its motion, Ventura argues that because Mardale failed to request an audit, and did not write a timely objection to the report, its claims must be dismissed.

Ventura further argues that Mardale frivolously brought this claim solely to avoid paying its former President, Ronald Tarantino, the $1.2 million judgment it owes him from an earlier unrelated suit. Mardale has avoided paying Tarantino, arguing that Tarantino is liable to it for failing to deliver usable nutritional supplement formulae to Ventura. Ventura argues that Mardale's suit forced it to file a counter-claim against Mardale, which Mardale could then use as an excuse to avoid paying Tarantino. The Court, during oral arguments of December 11, 2006, made it clear that it is "not concerned about Tarantino or any other case. [The Court is] only concerned about this. This is a contract interpretation." Tr. of hearing, December 11, 2006, page 18. Arguments regarding Plaintiff's alleged motives for filing the instant suit will not be entertained in this opinion.

Mardale's complaint alleges breach of contract, and requests declaratory judgment. In Paragraph 22, the complaint alleges that Mardale requested an audit "on or about March, 2005,"

4

with no additional information regarding the alleged audit request. In support of its claim for breach of contract, Mardale alleges in Paragraph 31 of the complaint that "Ventura has failed to permit Mardale to audit its financial records as required by the Asset Purchase Agreement."

Ventura argues in its motion that Mardale never requested an audit. Ventura claims that had Mardale requested an audit, such request would have been granted. In addition, Ventura claims that at the scheduling conference Mardale stated that it still awaited an audit. However, following the scheduling conference, when Ventura attempted to schedule one with Mardale, Ventura's overtures were ignored.

Mardale, in response, claims that it did not have to actually request an "audit" in order to comply with the terms of the Agreement. It states that "no reasonable person could have misconstrued the nature and scope of Mardale's request." In addition, Mardale claims that "there is nothing in the Asset Purchase Agreement to preclude Mardale from seeking to enforce its examination and audit rights judicially by means of a complaint." Rather than address this second argument, the Court will only point out that seeking to enforce contractual rights through the filing of a complaint, rather than through the avenues afforded pursuant to the underlying contract is clearly a waste of judicial resources. If Mardale desires an audit, it should request one through the means provided in the Agreement, rather than asking the Court to step in to its business dealings.

In order to prevail, pursuant to the Agreement, Mardale's claims require that Mardale actually requested an audit, and that such audit was denied. However, after the completion of discovery, Mardale was unable to produce any evidence that it had requested an audit. In response to Ventura's interrogatories, Mardale has stated only that it made such requests on May

16, 2005 and August 25, 2005. These dates match the dates of the two letters discussed above, in which Mardale requested only a *report* of net sales, and did not request that a representative of its own conduct an *audit*, as outlined in the Agreement. As explained above, the Agreement provides means for both a report and an audit. As such, because the Agreement provides specifically for two different methods of accounting, the difference between these two terms is substantial. Interpretation of contract is a question of law if contract terms are unambiguous. Abifadel v. Cigna Ins., Inc., 8 Cal. App. 4th 145, 159 (1992); "The words of a contract are to be understood in their ordinary and popular sense." Cal. Civ. Code § 1644. Mardale has not produced any other evidence of its claim that it requested an audit on those dates. Accordingly, the evidence demonstrates that Mardale did not request an audit, and as such, its breach of contract claim fails.

In addition, summary judgment on Mardale's declaratory judgment claim is appropriate. An action for a declaratory judgment is only proper if an actual controversy exists. 28 U.S.C. § 2201. Because Mardale has failed to demonstrate that it ever requested an audit, it has accordingly failed to show an actual controversy. In addition, because Mardale has not demonstrated that it objected to the August 30, 2005 sales report that Ventura sent, it has further failed to show an actual controversy.

## III. Order

Accordingly,

IT IS ORDERED that Defendant's Motion for Summary Judgment is GRANTED.

IT IS FURTHER ORDERED that Defendant's counterclaims are DISMISSED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment is DENIED as moot.


Dated: August 28, 2007             ___s/Bernard A. Friedman_____
       Detroit, Michigan           BERNARD A. FRIEDMAN
                                   CHIEF UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document
was served upon counsel of record by electronic and/or first-class mail.

s/Carol Mullins
Case Manager to Chief Judge Friedman